## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

THE ESTATE OF CARLOS BONILLA,
AND JOANNA BONILLA, AS
ADMINISTRATOR OF THE ESTATE OF
CARLOS BONILLA,

              Plaintiffs,

      v.

COUNTY OF HUDSON, NEW JERSEY;
HUDSON COUNTY CORRECTIONAL
CENTER; CFG HEALTH SYSTEMS, LLC;
EVELYN BERNARDO; CLAUDETTE
BLAKE; TAMMY COOPER; DAISY
DORONILA; PAUL ITTOOP; JANE
LOWE; TERESA O'BRIEN; MYRIAM
STERLIN; ERIC TAYLOR; AND
JOHN/JANE DOE HEALTHCARE
PROVIDERS 1-5,

              Defendants.

Civil Action No. 2:19-CV-13137

**<u>JURY TRIAL DEMANDED</u>**

## <u>COMPLAINT</u>

      Plaintiffs Estate of Carlos Bonilla and Joanna Bonilla, as administrator of the Estate of

Carlos Bonilla, for their Complaint against County of Hudson, New Jersey; Hudson County

Correctional Center; CFG Health Systems, LLC; Evelyn Bernardo; Claudette Blake; Tammy

Cooper; Daisy Doronila; Paul Ittoop; Jane Lowe; Teresa O'Brien; Myriam Sterlin; Eric Taylor;

and John/Jane Doe Healthcare Providers 1-5 hereby allege as follows:

## <u>PRELIMINARY STATEMENT</u>

      1.     This lawsuit arises out of the tragic and preventable death of Carlos Bonilla, a

father of four who fatally hemorrhaged while confined to civil immigration detention.  Mr.

Bonilla died from complications of cirrhosis, a treatable condition Defendants knew about—but

failed to evaluate and treat—despite their knowledge and Mr. Bonilla's repeated requests for medical attention.  Instead of evaluating the progression of Mr. Bonilla's cirrhosis, coming up with a treatment plan, considering Mr. Bonilla's medical history, referring Mr. Bonilla to a specialist, or simply prescribing the medication he had already been prescribed, Defendants left him to languish, suffer, and eventually die horrifically and unnecessarily.  Defendants wrongfully denied Mr. Bonilla essential medical care, and as a result, he bled to death from the inside out.

2.      Mr. Bonilla died at 43.  He had lived in the United States for almost 25 years, and supported himself and his family by working at a construction company he owned with his brother.  At the time of his death, Mr. Bonilla's four children were 8, 17, 21, and 24 years old.

3.      United States Immigration and Customs Enforcement ("ICE") arrested and detained Mr. Bonilla on April 1, 2017, and sent him to be confined to civil immigration detention at Hudson County Correctional Center in Hudson County, New Jersey.  He would remain confined until he died, just over two months later, from Defendants' failure to provide him with adequate medical care.

4.      Mr. Bonilla had cirrhosis, a chronic liver disease that, if left untreated, can cause deadly complications.  Mr. Bonilla had been receiving medical treatment for years prior to his arrest by ICE, including prescriptions for medications that were necessary to prevent and manage complications of cirrhosis.  When Mr. Bonilla arrived at Hudson County Correctional Center, and reported his history of cirrhosis, Defendants repeatedly failed to evaluate and treat him.  Mr. Bonilla's family seeks to hold Defendants accountable for their failure to ensure that Mr. Bonilla received essential medical care.

5.      It is well documented that from the time Defendants initially processed Mr. Bonilla at Hudson County Correctional Center, they knew that he had a history of cirrhosis, and knew the medications that he needed to survive.  Despite noting in his medical record that he had cirrhosis and obtaining his pharmacy records, Defendants did not take the needed steps to evaluate the progression of Mr. Bonilla's illness and provide treatment for cirrhosis and cirrhosis complications.

6.      Mr. Bonilla's official cause of death was "internal bleeding and hemorrhagic shock" caused by varices, a common and manageable complication that patients diagnosed with cirrhosis can experience.  Mr. Bonilla began to bleed at least three days before he hemorrhaged to death.  He was transported to the hospital on the very date that he was scheduled to appear before an immigration judge to determine whether he would be released on bond to his family and community.

7.      For Hudson County, which owns and operates Hudson County Correctional Center, holding people in confinement for ICE is big business.  Hudson County has contracted with ICE to confine people who are in removal proceedings since 1996.  In 2017 alone, Hudson County made eight million dollars in profit from this lucrative contract.  At all times relevant to this lawsuit, Hudson County contracted with CFG Health Systems, LLC ("CFG"), a private healthcare company, to provide low-cost—and grossly inadequate—medical care for people held at Hudson County Correctional Center.

8.      The devastatingly inadequate medical care Defendants dispensed to Mr. Bonilla is not an anomaly at Hudson County Correctional Center.  Defendants have a well-established practice of providing inadequate medical care to the people confined and treated there, leading to

multiple deaths in recent years. Since 2013, at least 17 people have died at Hudson County Correctional Center under Defendants' care.

9.     Defendants Hudson County, Hudson County Correctional Center, CFG, Taylor, Sterlin, Lowe, and Blake failed to properly train and supervise the medical staff at Hudson County Correctional Center, which resulted in Mr. Bonilla's death. The long, documented history of patients receiving inadequate medical care at Hudson County Correctional Center prior to Mr. Bonilla's death put Defendants on notice of the dire need for proper training and supervision of medical staff.

10.     In March 2018, after mounting public outrage over the many people who had died or were harmed in the custody of Hudson County Correctional Center, Hudson County terminated its five-year, 29-million-dollar contract with CFG, entered into in 2016. With this lawsuit, Mr. Bonilla's family seeks to hold accountable all those who failed to adequately evaluate and treat Mr. Bonilla while he was confined at Hudson County Correctional Center, and who caused his suffering and death.

## PARTIES

11.     Plaintiff Joanna Bonilla is the administrator of the Estate of Carlos Bonilla (the "Estate"). Ms. Bonilla brings this action on behalf of the beneficiaries of the Estate, as well as Mr. Bonilla's heirs. The Estate is being administered in the State of New York. Plaintiff resides in Brentwood, New York and can be contacted via Dechert LLP, 502 Carnegie Center, Suite 104, Princeton, New Jersey 08540.

12.     Defendant Hudson County is a municipality of the State of New Jersey. Hudson County owns and operates Hudson County Correctional Center, where Mr. Bonilla was confined to civil immigration detention. Hudson County's Administrative Offices are located at 567 Pavonia Avenue, Jersey City, New Jersey 07306.

13.     Defendant Hudson County Correctional Center is a county jail located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032.

14.     Defendant CFG Health Systems, LLC is a physician-owned and -operated business that provides health services to correctional facilities.  CFG provided health services at Hudson County Correctional Center during Mr. Bonilla's confinement to civil immigration detention.  CFG is headquartered at 765 East Route 70, Building A-101, Marlton, New Jersey 08053.

15.     Defendant Evelyn Bernardo, at all times relevant hereto, was a Registered Nurse at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  She is sued in her individual capacity.  Defendant Bernardo treated Mr. Bonilla and/or oversaw Mr. Bonilla's medical treatment, under the supervision of CFG and/or Hudson County Correctional Center.

16.     Defendant Claudette Blake, at all times relevant hereto, was the Health Services Administrator at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  She is sued in her individual capacity.  Defendant Blake was responsible for the provision of medical care to people confined at Hudson County Correctional Center and oversaw the entire medical operation at the facility.

17.     Defendant Tammy Cooper, at all times relevant hereto, was a nurse practitioner at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  She is sued in her individual capacity.  Defendant Cooper treated Mr. Bonilla and/or

oversaw Mr. Bonilla's medical treatment, under the supervision of CFG and/or Hudson County Correctional Center.

18.    Defendant Daisy Doronila, at all times relevant hereto, was a Registered Nurse at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  She is sued in her individual capacity.  Defendant Doronila treated Mr. Bonilla and/or oversaw Mr. Bonilla's medical treatment, under the supervision of CFG and/or Hudson County Correctional Center.

19.    Defendant Dr. Paul Ittoop, at all times relevant hereto, was a licensed physician at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  He is sued in his individual capacity.  Defendant Ittoop treated Mr. Bonilla and/or oversaw Mr. Bonilla's medical treatment, under the supervision of CFG and/or Hudson County Correctional Center.

20.    Defendant Jane Lowe, at all times relevant hereto, was the Director of Nursing at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  She is sued in her individual capacity.  Defendant Lowe was responsible for the provision of medical care to people held in confinement at Hudson County Correctional Center.

21.    Defendant Teresa O'Brien, at all times relevant hereto, was a Registered Nurse at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  She is sued in her individual capacity.  Defendant O'Brien treated Mr. Bonilla and/or

oversaw Mr. Bonilla's medical treatment, under the supervision of CFG and/or Hudson County Correctional Center.

22.    Defendant Dr. Myriam Sterlin, at all times relevant hereto, was the Medical Director at Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County.  She is sued in her individual capacity.  Defendant Sterlin was responsible for the provision of medical care to people held in confinement at Hudson County Correctional Center.

23.    Defendant Eric Taylor, at all times relevant hereto, was the Director of Hudson County Correctional Center, located at 30-35 South Hackensack Avenue, Kearny, New Jersey 07032, and an employee of CFG, Hudson County Correctional Center, and/or Hudson County. He is sued in his individual capacity.  As the Director, Defendant Taylor was responsible for supervising all staff at Hudson County Correctional Center, including overseeing the medical staff and provision of medical care at the facility.

24.     Defendants John/Jane Does 1 through 5 treated Mr. Bonilla and/or oversaw the medical treatment of Mr. Bonilla, as employees of CFG, Hudson County Correctional Center, and/or Hudson County, under the supervision of CFG and/or Hudson County Correctional Center.  They are sued in their individual capacities.  Defendants John/Jane Does 1 through 5's residential addresses are unknown.  The identities of Defendants John/Jane Does 1 through 5 cannot be ascertained at this time.

## JURISDICTION AND VENUE

25.    Plaintiffs bring this Complaint under the Fifth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983 to redress Defendants' deprivation of Mr. Bonilla's constitutional rights.  Plaintiffs also bring related claims arising under New Jersey law.

26.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3) and (4), and 28 U.S.C. § 1367(a).

27.     Venue lies properly with this district pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events or admissions giving rise to the claims occurred in this district.

28.     On September 7, 2017, Plaintiffs submitted and served on Defendants a Notice of Claim, alleging injury as a result of negligence and inadequate medical care by the State of New Jersey, Hudson County, and Hudson County Correctional Center, as well as any and all agents, servants, and/or employees responsible for confining Mr. Bonilla in civil immigration detention, providing and overseeing his medical treatment, and training and supervising those who provided his medical treatment during his confinement at Hudson County Correctional Center. In that Notice of Claim, Plaintiffs sought to recover for, inter alia, wrongful death, survival and/or survivorship, personal injury, negligence, medical malpractice, denial of adequate medical treatment, pain and suffering, mental anguish, emotional injuries, negligent supervision, loss of enjoyment of life, loss of financial support, funeral costs, medical expenses, and the loss of care, guidance, companionship, supervision, and services.

29.     The six-month statutory period during which the State of New Jersey, Hudson County, and Hudson County Correctional Center investigated Plaintiffs' claim lapsed without any action by Defendants.  Plaintiffs have exhausted their administrative remedies.

## STATEMENT OF FACTS

### I.     Mr. Bonilla's Life Before Immigration Detention

30.     Prior to his confinement to civil immigration detention at Hudson County Correctional Center, Mr. Bonilla lived on Long Island, New York for approximately 25 years.

His life was rich with family and friends, and Mr. Bonilla worked hard to support himself and his family.

31.     Mr. Bonilla is survived by a loving family that includes three daughters and one son.  All four of Mr. Bonilla's children enjoyed a close relationship with their father prior to his death and depended on him emotionally and financially.

32.     Mr. Bonilla's youngest daughter, M.R., is 10 years old, and was 8 when her father died.  Mr. Bonilla lived with M.R. and her mother immediately prior to his confinement to civil immigration detention at Hudson County Correctional Center.  M.R. spent significant time with her father after school and on weekends.

33.     Mr. Bonilla's eldest daughters, Katherine and Joanna, are 19 and 23 years old, respectively.  Katherine was a 17-year-old high school junior when Mr. Bonilla died, and Joanna was 21.  Katherine spent many afternoons after school and weekends with her father, and Joanna would often spend time with him on weekends and holidays.  They spoke with their father on the phone frequently about their daily lives, school, and work, and he gave them parental advice and companionship.

34.     Mr. Bonilla's son, Carlos Javier, is 26 years old.  Carlos Javier had a close relationship with his father and learned from him.  They regularly spent time together.

**II.     Mr. Bonilla's Medical History Prior to Immigration Detention**

35.     In the years leading up to his death, Mr. Bonilla was diagnosed with chronic illnesses including cirrhosis of the liver and diabetes.  Prior to his confinement to civil immigration detention at Hudson County Correctional Center, Mr. Bonilla received treatment in his community for complications of cirrhosis, including anemia, ascites, varices, hepatic

9

encephalopathy, and gastrointestinal bleeding.  Without adequate medical care, Mr. Bonilla's life was in danger.

36.    When Mr. Bonilla was living in his community—and not confined at Hudson County Correctional Center—he was able to access proper medical evaluation and treatment, and repeatedly recovered from these complications.  Following each of these complications, Mr. Bonilla was able to return to his work, life, and family.

### III.    Mr. Bonilla Is Confined to Immigration Detention at Hudson County Correctional Center

37.    On the morning of April 1, 2017, while Mr. Bonilla was on his way to work, ICE arrested him in Central Islip, New York.

38.    After arrest, ICE detains people while they await the outcome of their civil immigration cases.  Immigration detention is intended to ensure appearances at immigration court, and is non-punitive.  Since 1996, Hudson County has contracted with ICE to confine people to civil immigration detention at Hudson County Correctional Center.  Hudson County contracts with CFG to provide medical care to the people confined at Hudson County Correctional Center, including those detained by ICE.[1]

39.    Mr. Bonilla was transported to civil immigration detention at Hudson County Correctional Center on the evening of April 1, 2017.  Mr. Bonilla was under Defendants' care,

---

[1] In 2002, Hudson County and the United States entered into an updated fifteen-year agreement whereby Hudson County agreed to confine approximately 400 people at a time for ICE.  Today, Hudson County Correctional Center confines over 600 people in civil immigration detention.  An additional approximately 400 people are held at Hudson County Correctional Center in relation to criminal proceedings.  According to press accounts, Hudson County receives as much as 35 million dollars per year from ICE in exchange for confining people to civil immigration detention at Hudson County Correctional Center.

custody, and control from that point forward, and Defendants had a duty to provide Mr. Bonilla with adequate medical care from that date.

IV.    **Mr. Bonilla Receives Inadequate Medical Care at Hudson County Correctional Center**

40.    When Mr. Bonilla arrived at Hudson County Correctional Center on April 1, 2017, Josephine Bringas, a nurse, conducted an intake examination. Nurse Bringas escalated Mr. Bonilla's case to Defendant Tammy Cooper, a nurse practitioner, and made Mr. Bonilla a "Priority Level: Urgent" patient because Mr. Bonilla had diabetes. Defendants' "priorities," however, tragically failed to include examining or treating Mr. Bonilla's cirrhosis and related complications.

41.    Defendants had actual knowledge that Mr. Bonilla had a history of cirrhosis because Mr. Bonilla reported his cirrhosis diagnosis to Defendant Cooper. From day one, Mr. Bonilla's medical file at Hudson County Correctional Center correctly documented that he had been diagnosed with cirrhosis prior to entering the facility. On April 6, 2017, Mr. Bonilla's community pharmacy faxed to Defendants a list of medications that Mr. Bonilla had been prescribed prior to his confinement at Hudson County Correctional Center. Mr. Bonilla needed these medications to manage his disease. Mr. Bonilla's list of medications also provided insights into the complications of cirrhosis that he had experienced.

42.    At Hudson County Correctional Center, Mr. Bonilla desperately advocated for his own medical care. Throughout his confinement, Mr. Bonilla repeatedly requested medical care. Over and over, he pleaded for help based on symptoms that can indicate dangerous complications of cirrhosis, including anemia, fever, weakness, dizziness, nosebleed, infection, and abdominal pain. Mr. Bonilla also implored that he needed to see a doctor, having only been seen by nurses and nurse practitioners, and that he needed to have his blood tested.

43.     Mr. Bonilla's first language was Spanish.  At Hudson County Correctional Center, Mr. Bonilla repeatedly made requests in Spanish for medication and medical assistance.

44.     Each of Mr. Bonilla's many interactions with medical staff at Hudson County Correctional Center was a lost opportunity to provide Mr. Bonilla with the testing, evaluation, treatment, and medications he needed to survive:

a.  During his medical intake on April 1, 2017, his first day of confinement, Mr. Bonilla told Defendant Nurse Practitioner Tammy Cooper that he had cirrhosis, which she recorded in her examination report.  Defendant Cooper failed to examine, evaluate, and treat Mr. Bonilla for this condition and related complications, and failed to refer Mr. Bonilla to a qualified medical provider for evaluation and treatment, which caused Mr. Bonilla's death.

b.  On April 3, 2017, Radiologist Dr. Jeffrey B. Bernfield issued a report concerning a chest X-ray for Mr. Bonilla, an element of Mr. Bonilla's medical intake with Hudson County Correctional Center.  Defendant Dr. Paul Ittoop reviewed Mr. Bonilla's chest X-ray.

c.  Defendant Registered Nurse Teresa O'Brien saw Mr. Bonilla for a sick call on April 14, 2017, because he had a nosebleed.  Bleeding episodes are a common and dangerous complication of cirrhosis, and Mr. Bonilla's records from this date state that he had cirrhosis.  Defendant O'Brien failed to identify Mr. Bonilla's cirrhosis diagnosis and refer Mr. Bonilla to a qualified medical provider for evaluation and treatment of cirrhosis and related complications, which caused Mr. Bonilla's death.

d.  Defendant Registered Nurse Evelyn Bernardo saw Mr. Bonilla for sick calls on April 25, May 3, May 11, May 18, and June 7, 2017.  Mr. Bonilla reported a sore

throat, cough, abdominal pain, rash, fever, headache, weakness, and dizziness. Moreover, he asked to see a doctor, requested bloodwork, and told Defendant Bernardo that he had anemia. Each of the symptoms Mr. Bonilla experienced can indicate common and dangerous complications of cirrhosis, and Mr. Bonilla's medical records from these dates state that he had cirrhosis. Defendant Bernardo failed to identify Mr. Bonilla's cirrhosis diagnosis and refer Mr. Bonilla to a qualified medical provider for evaluation and treatment of cirrhosis and related complications, which caused Mr. Bonilla's death.

e. On June 5, 2017, Mr. Bonilla fell in the shower and hurt his elbow, days after telling medical staff that he felt dizzy. Defendant Registered Nurse Daisy Doronila saw Mr. Bonilla for a sick call the next day.2 Defendant Doronila sent Mr. Bonilla to Dr. Anthony Kaiser, an orthopedic specialist, who examined Mr. Bonilla's elbow and prescribed antibiotics for a suspected infection. Dizziness and disorientation can indicate common and dangerous complications of cirrhosis, and Mr. Bonilla's medical records from these dates state that he had cirrhosis. Defendant Doronila failed to identify Mr. Bonilla's cirrhosis diagnosis and refer Mr. Bonilla to a qualified medical provider for evaluation and treatment of cirrhosis and related complications, which caused Mr. Bonilla's death.

f. On June 6 and 7, 2017, after Mr. Bonilla had spent more than two months in civil immigration detention, Defendant Ittoop ordered additional follow-up for Mr. Bonilla's elbow injury and suspected infection. It appears from Mr. Bonilla's

---

[2] Defendant Doronila's last name is spelled "Doronilla" in Mr. Bonilla's Hudson County Correctional Center medical records. Upon information and belief, the correct spelling is "Doronila."

medical records that Defendant Ittoop also prescribed medication for Mr. Bonilla without actually having met with him.  The medical records from these dates state that Mr. Bonilla had cirrhosis.  Defendant Ittoop failed to examine, evaluate, and treat Mr. Bonilla for this condition and related complications, and failed to refer Mr. Bonilla to another doctor for evaluation and treatment, which caused Mr. Bonilla's death.

45.    Despite being apprised time and time again that Mr. Bonilla had cirrhosis, Defendants failed to provide examination, evaluation, or treatment for the disease and its life-threatening complications that could—and did—occur.  Rather, Mr. Bonilla was reassured by medical staff, provided with "health teaching," advised to drink more fluids, prescribed painkillers and a cough suppressant, and promised follow-up care that never materialized.

46.    Over the course of Mr. Bonilla's two long months in civil immigration detention, Defendants failed to evaluate or treat Mr. Bonilla for cirrhosis, even though they had the diagnosis in hand and enough information to know that Mr. Bonilla had previously developed dangerous complications of cirrhosis.  Defendants never conducted a chronic care assessment, never created a care plan, never examined him, never referred him to a specialist relating to his cirrhosis diagnosis, never gave him the medications that he so desperately required for this life-threatening disease, and never evaluated the progression of his cirrhosis, which would have indicated just how badly Mr. Bonilla required medical intervention to survive.  Unfortunately for Mr. Bonilla, by the time he arrived at Hudson County Correctional Center, his cirrhosis required medication and monitoring to prevent potentially fatal complications.

47.    The medical standard of care in these situations is clear.  Because cirrhosis is typically diagnosed only after a patient experiences a serious complication of the disease, part of

the standard of care for cirrhosis patients is to engage in significant monitoring and follow-up. Monitoring and ongoing care for cirrhosis include blood tests, screening for liver cancer, beta-blockers to prevent bleeding, and surveillance endoscopies.

48.    At Hudson County Correctional Center, doctors and administrators have abdicated their responsibility to provide medical care to the facility's nurses, regardless of a patient's condition, diagnosis, or need for a doctor's care. This has left nurses to provide (or fail to provide) care far beyond their qualifications and licensure, and which should properly be provided only by a licensed physician. Nurses are often the only medical professionals to provide medical care in response to sick calls, the mechanism for an individual to request medical care at Hudson County Correctional Center. Sometimes matters are elevated to a nurse practitioner, but seeing a doctor is rare, even when a doctor's medical expertise is required. This policy, practice, and custom of relying on the nursing staff to provide medical care, without adequate doctor supervision or involvement, was created, enforced, and acquiesced to by Defendants Blake, Lowe, Sterlin, and Taylor, as well as Hudson County, Hudson County Correctional Center, and CFG.

## V.    Deprived of Adequate Medical Care, Mr. Bonilla Bleeds to Death at Jersey City Medical Center

49.    On June 8, 2017, Hudson County Correctional Center called an emergency code for Mr. Bonilla at 4:38 a.m. Mr. Bonilla was leaving his cell to attend a hearing to determine whether he would be released on bond. His speech was slurred, he was dizzy and stumbling, and he reported having diarrhea. Although Mr. Bonilla was brought immediately to Hudson County Correctional Center's clinic by stretcher, it was not until 6:20 a.m. that he was eventually transported to Jersey City Medical Center. When he arrived at the hospital, Mr. Bonilla had blood in his stool, blood clots in his esophagus, abdominal pain, weakness, and dizziness.

50.     Just across the Hudson River, Mr. Bonilla's family and immigration attorney were waiting for him to arrive at the Varick Street courtroom in lower Manhattan for his immigration bond hearing.  But Mr. Bonilla never showed up.

51.     Mr. Bonilla died at Jersey City Medical Center on June 10, 2017, after experiencing agonizing pain and suffering.  Mr. Bonilla's official cause of death was "internal bleeding and hemorrhagic shock," caused by varices, a common and manageable complication experienced by patients who have been diagnosed with cirrhosis.  Beginning with Mr. Bonilla's sick calls at Hudson County Correctional Center, Mr. Bonilla experienced extreme pain and suffering until he needlessly bled to death.

## VI.     Mr. Bonilla's Death Has Had a Devastating Impact on His Family

52.     Mr. Bonilla's children have suffered—and continue to suffer—because of their father's untimely death at the hands of Defendants.  They have lost their loving father and no longer have the benefit of his parenting.  They are without the support, guidance, caretaking, and company that only Mr. Bonilla could provide.  They now live with the injustice of his premature death and the many unanswered questions surrounding Defendants' conduct and how such a tragedy could be permitted to occur.

53.     Mr. Bonilla's family paid for his funeral and burial expenses out of pocket, and now his children struggle without his financial support.  Mr. Bonilla's eldest daughter, Joanna, has had to take on greater financial responsibilities since her father's death.  She has suffered under the weight of the responsibility of administering her father's estate and has had to care for her younger siblings.  Mr. Bonilla's middle daughter, Katherine, has been unable to continue her education and has had to enter the workforce to contribute to the family's finances.  Carlos Javier has lost his father's companionship.  M.R., Mr. Bonilla's youngest child, who was only 8 when

16

he died, has lost the daily company of her father and the financial support he provided.  Mr.

Bonilla's family is, quite simply, broken and devastated.

### VII. The Applicable Standard of Care, Policies, and Guidelines Plainly Required Hudson County Correctional Center to Provide Mr. Bonilla Medical Care to Prevent Deadly Cirrhosis Complications

54.    Mr. Bonilla was under Defendants' care, custody, and control while he was

confined to civil immigration detention at Hudson County Correctional Center.  Mr. Bonilla was

thus wholly dependent upon the medical care Defendants made available to him the entire time

he was confined at Hudson County Correctional Center.

55.    Accordingly, Defendants had a collective duty to provide medical care that was

both reasonable and adequate, and compliant with applicable standards.  These standards

required the provision of timely, thorough, and continuously managed and monitored care by

properly credentialed medical providers, and specialized care when necessary.  Defendants

egregiously breached these standards by failing to evaluate and treat Mr. Bonilla's cirrhosis,

creating a system where he was evaluated and treated by nurses who were not qualified to

evaluate and treat him, failing to create a treatment plan, failing to provide the medications

previously prescribed to him to treat his cirrhosis and related complications, and failing to

provide or arrange for specialty care.

56.    Medical professionals at Hudson County Correctional Center are also governed

by various policies, guidelines, and standards relevant to the applicable standard of care.  These

include ICE's *Performance Based National Detention Standards* and the *Standards for Health

Services in Jails*, promulgated by the National Commission on Correctional Health.

Additionally, the State of New Jersey has codified medical standards for correctional facilities in

the New Jersey Uniform Administrative Procedures Rules, Title 10A:16-2, which Hudson

County Correctional Center memorialized in its *Health Services Policies and Procedures Manual*.

### a. ICE's Own *Performance Based National Detention Standards* Includes Practices That Would Have Prevented Mr. Bonilla's Death

57. Hudson County was contractually bound to comply with ICE's *Performance Based National Detention Standards* ("National Detention Standards") when it contracted with ICE to confine people in civil immigration detention. The National Detention Standards are designed to ensure that people in ICE custody, including those confined to county jails like Hudson County Correctional Center, receive needed medical care and pharmaceutical services from qualified health care providers, precisely to prevent what happened to Mr. Bonilla.

58. The National Detention Standards require the timely provision of a continuum of needed health care services, including initial medical screening, the provision of prescriptions and medications, and specialty health care. Care is to be provided by qualified medical staff and personnel. For patients requiring chronic care, a written treatment plan approved by a licensed physician is to be completed and periodically reviewed.

59. As set forth above, Defendants failed to comply with the National Detention Standards.

### b. The National Commission on Correctional Health Care Recommends Practices That Would Have Prevented Mr. Bonilla's Death

60. The National Commission on Correctional Health Care is a non-governmental organization dedicated to improving the quality of correctional health services and helping correctional facilities provide effective and efficient care. It publishes the manual *Standards for Health Services in Jails* ("National Corrections Standards"), a nationally recognized framework for evaluating healthcare in correctional settings.

61.     Hudson County Correctional Center is accredited by the National Commission on Correctional Health, and accordingly is required to comply with the National Corrections Standards.

62.     Similar to the National Detention Standards, the National Corrections Standards require the provision of timely care for serious medical needs, including initial medical screening; provision of necessary medications; specialty health care; frequent treatment and follow-up for chronic conditions; and communication between facility administrators and healthcare providers regarding the health needs of patients.  Additionally, medical providers are to be properly licensed, certified, or registered, and may not perform tasks beyond their credentials.

63.     As set forth above, Defendants failed to comply with the National Corrections Standards.

###     c.   Hudson County Correctional Center's Own *Health Services Policies and Procedures Manual* Requires Practices That Would Have Prevented Mr. Bonilla's Death

64.     New Jersey Uniform Administrative Procedure Rules, Title 10A:16-2, sets forth requirements and responsibilities for corrections facilities in New Jersey.  Hudson County Correctional Center's *Health Services Policies and Procedures Manual* ("Hudson Health Services Manual") memorializes these requirements.

65.     The Hudson Health Services Manual is intended to ensure that people confined at Hudson County Correctional Center receive proper health care from qualified medical providers based on clinical judgment and conforming with community standards of care.  Accordingly, the Manual requires, among other things:

- Continuity in care shall be effectuated through intake evaluations, timely access to care, structured care plans, and continuous quality assessment to

prescribe appropriate treatment and develop and modify care plans as indicated.

- The initial health assessment shall include necessary medical tests and initiation of medication therapy.  Test results, significant findings, and identified health problems shall be reviewed by a physician.

- The first primary chronic care visit shall be within one month of diagnosis. Subsequent appointments shall be scheduled as prescribed by community standards of care.

- Patients with long term or potentially serious conditions shall be referred to community resources or chronic clinics.

66.     As set forth above, Defendants failed to comply with the requirements of the New Jersey Uniform Administrative Procedures Rules, Title 10A, and the Hudson Health Services Manual.

### VIII.   Hudson County, Hudson County Correctional Center, and CFG Have a Custom, Policy, and/or Practice of Providing Inadequate Medical Care

67.     Defendants were well aware of the systemic failures in the medical care provided by Hudson County Correctional Center and CFG.  Reports, news articles, and lawsuits detail numerous instances of inadequate medical care at Hudson County Correctional Center in the months and years leading up to Mr. Bonilla's death.  For many years, Defendants Hudson County, Hudson County Correctional Center, and CFG, as well as Defendants Taylor, Blake, Lowe, and Sterlin, have had a custom, policy, and/or practice of providing inadequate medical care to people confined at Hudson County Correctional Center.  These Defendants' failure to provide adequate medical care to Mr. Bonilla is appalling and was not a one-time occurrence.

68.     In 2007, the American Civil Liberties Union of New Jersey issued a report detailing inadequate medical care at New Jersey civil immigration detention facilities, including Hudson County Correctional Center, entitled *Behind Bars: The Failure of the Department of Homeland Security to Ensure Adequate Treatment of Immigration Detainees in New Jersey*.

20

This report described a man whose health significantly deteriorated because he received inadequate medical care for his chronic medical issues while he was confined at Hudson County Correctional Center.  It ultimately concluded, "County jails, meant to be temporary holding facilities, are ill-equipped to provide adequate medical care to long-term immigration detainees."

69.     In 2012, Detention Watch Network released a report entitled *Expose & Close*, which also described inadequate medical care at Hudson County Correctional Center for people with serious or chronic conditions.  *Expose & Close* sets forth several examples of inadequate medical care at the facility, including a woman previously diagnosed with HIV who was not given medication, and a woman previously diagnosed with bipolar disorder who did not receive any treatment at all.

70.     In 2015, New Jersey Advocates for Immigrant Detainees, a coalition that includes New York University School of Law's Immigrant Rights Clinic, American Friends Service Committee, and other community-based organizations, released a report entitled *23 Hours in the Box: Solitary Confinement in New Jersey Immigration Detention*.  This report concluded that Hudson County Correctional Center overused solitary confinement in immigration detention and failed to adequately screen, monitor, and treat mental health issues that can arise or be exacerbated when a person is placed in solitary confinement.

71.     In May 2016, Community Initiatives for Visiting Immigrants in Confinement ("CIVIC")[3] and First Friends of New Jersey and New York filed a complaint with the Office for Civil Rights and Civil Liberties at the Department of Homeland Security (the "CIVIC OCR Complaint") about inadequate medical care at Hudson County Correctional Center, on behalf of 61 individuals who were held in civil immigration detention at the facility.  The CIVIC OCR

---

[3] CIVIC, founded in 2012, changed its name to Freedom for Immigrants in 2018.

Complaint reveals a pattern and practice of substandard care at Hudson County Correctional Center, including delayed or denied care for serious conditions and diseases; lack of continuity of care for people arriving with chronic conditions; extended delays in responding to requests for medical treatment; unwarranted limits on access to necessary medical treatment, supplies, and services; failure to provide medication upon release; and denial of requested medical records.

72.    The CIVIC OCR Complaint also includes CIVIC's findings from its review of grievances that people filed while they were confined to civil immigration detention at Hudson County Correctional Center.  CIVIC found that between January 2014 and May 2016, over 120 people confined at Hudson County Correctional Center submitted medical grievances, and that the facility took corrective action in less than three percent of these cases.

73.    Following the CIVIC OCR Complaint, in the months prior to Mr. Bonilla's death, Detention Watch Network released another report about Hudson County Correctional Center in its *Immigration Detention Inspection Series* based upon a March 2016 inspection of the facility. Detention Watch Network's report identifies multiple instances in which people with chronic or serious medical issues reported that they did not receive adequate medical care.

74.    After these public reports, in October 2016, approximately eight months prior to Mr. Bonilla's death, Hudson County established a committee to review the medical care Defendants were providing to people held in civil immigration detention.  Hudson County's *Report on the Medical Care and Treatment of ICE Detainees Housed in the Hudson County Correctional Center* admits that there are problems with the medical care provided at Hudson County Correctional Center, including the timely identification and treatment of patients who are chronically ill, and that the medical care does not meet the standards set forth in either the National Detention Standards or the National Correctional Standards.

75.    In February 2017, less than two months before Mr. Bonilla entered Hudson County Correctional Center, New York Lawyers for the Public Interest ("NYLPI") published a report entitled *Detained and Denied: Healthcare Access in Immigration Detention*, which details serious deficiencies in the medical care provided to people confined to civil immigration detention in three New York-area facilities, including Hudson County Correctional Center. Based on interviews with 47 people who had been confined to these facilities, NYLPI identified the following patterns of inadequate care: failure to manage chronic illnesses; denial of continued treatment upon admission; incomplete intake assessments; lengthy delays in receiving medical treatment; denial of requests for offsite specialized care; inadequate treatment for acute pain; denial of adequate exercise and nutrition; lack of mental health discharge planning; and barriers to language access.

76.    In May 2017, approximately one month prior to Mr. Bonilla's death, Human Rights Watch issued a report entitled *Systemic Indifference: Dangerous & Substandard Medical Care in US Immigration Detention*.  This report found that Defendants Hudson County, Hudson County Correctional Center, and CFG failed to adequately provide medical care to patients with serious or chronic illnesses—including a patient who developed colorectal cancer—and generally reported extensive delays in responding to sick calls.

77.    Defendants' knowledge of their own pattern and practice of providing inadequate medical care does not end there.  In the approximately 15 years prior to Mr. Bonilla's death, Hudson County was sued at least 12 times based upon Hudson County Correctional Center's failure to recognize, diagnose, and treat known, chronic illnesses.

78.    CFG and its employees have been sued at least 60 times concerning their failure to provide adequate medical care at various facilities—specifically when specialty care was

required—within the last 15 years alone.  Almost all of these lawsuits were based on care provided prior to Mr. Bonilla's confinement to immigration detention.  Of the cases brought prior to Mr. Bonilla's confinement to immigration detention, at least 15 were brought to hold CFG accountable for deaths from preventable complications after CFG and the facilities failed to properly identify, diagnose, and treat chronic physical or mental health conditions.  Additionally, many of these cases were brought by people who suffered permanent injury because CFG and the facilities failed to properly identify, diagnose, and provide specialty care for their chronic illnesses.

79.    Following Mr. Bonilla's death, and at the request of Hudson County, the National Commission on Correctional Health Care released a report in October 2017 entitled *Health Services Quality Assessment at Hudson County Correctional Center* (the "Hudson Assessment"). The recommendations of the Hudson Assessment include the following admissions: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms Defendants' longstanding pattern and practice of providing inadequate medical care, particularly to patients such as Mr. Bonilla with serious, chronic conditions.

80.    Following Mr. Bonilla's death, Human Rights First released a February 2018 report entitled *Ailing Justice: New Jersey, Inadequate Healthcare, Indifference, and Indefinite Confinement in Immigration Detention* ("*Ailing Justice*").  *Ailing Justice* identified multiple instances of inadequate medical care at Hudson County Correctional Center, including a woman diagnosed with glaucoma before she was confined at the facility, who received no medical care

for this condition.  *Ailing Justice* also concluded that intake screenings for medical problems at Hudson County Correctional Center were superficial and did not focus on patients' chronic medical conditions.

### IX.    Failure to Properly Train and Supervise the Medical Staff at Hudson County Correctional Center

81.    Defendants Hudson County, Hudson County Correctional Center, CFG, Taylor, Sterlin, Lowe, and Blake failed to properly train and supervise the medical staff at Hudson County Correctional Center, resulting in the provision of inadequate medical care and Mr. Bonilla's death at age 43.

82.    Defendants Taylor, Sterlin, Lowe, and Blake were policymakers at Hudson County Correctional Center, and knew that medical staff at the facility would be required to provide care to a population of patients who statistically have an above-average rate of serious ailments.  They further knew that it was highly predictable that providing inadequate medical care would have deadly consequences.

83.    These Defendants, along with Defendants Hudson County, Hudson County Correctional Center, and CFG, did not adequately supervise the medical staff at Hudson County Correctional Center throughout Mr. Bonilla's confinement:

  a.  Mr. Bonilla's intake was conducted by nursing staff, and was not reviewed by a medical doctor.  Nursing staff's decision to provide chronic care for Mr. Bonilla's diabetes, but not for Mr. Bonilla's cirrhosis and its complications, was not supervised by a doctor.

  b.  Hudson County Correctional Center received Mr. Bonilla's records from Brentwood Pharmacy within days of his arrival at the facility.  Doctors at the facility did not review nursing staff's determination that Mr. Bonilla only required diabetes medication.

  c.  Mr. Bonilla made at least eight sick call requests throughout his confinement.  In each of these requests, he described symptoms that can be related to dangerous complications from cirrhosis, but he was only seen and evaluated by a doctor for an elbow injury.

       d.   Mr. Bonilla's medical records from each of at least ten in-person interactions with medical staff for these potentially dangerous symptoms all state that he has a history of cirrhosis, and there is no indication that a doctor signed off on the care that CFG nurses were providing for this illness. Defendant Ittoop signed off only on the medical records associated with Mr. Bonilla's elbow injury.

84.    Defendants Hudson County, Hudson County Correctional Center, CFG, Taylor, Sterlin, Lowe, and Blake did not adequately train the medical staff at Hudson County Correctional Center prior to and throughout Mr. Bonilla's confinement. They failed to adequately train medical staff to ensure, inter alia, that health staff only perform duties within their credentials, training, and experience; patients receive timely and proper evaluation, treatment, medications, and specialty care; and patients' medical conditions are timely, thoroughly, and continuously monitored and treated.

85.    Moreover, and as set forth above, the long, documented history of the provision of inadequate medical care at Hudson County Correctional Center and other correctional and detention facilities where CFG operated prior to Mr. Bonilla's death put these Defendants on notice of CFG's propensity for providing inadequate medical care, and the dire need for proper training and supervision of medical staff.

86.    Specifically, these Defendants were on notice of the following inadequacies in the medical care provided at Hudson County Correctional Center prior to Mr. Bonilla's confinement:

       a.   medical staff performed duties outside their credentials and training, and without adequate supervision;

       b.   patients were not properly evaluated;

       c.   patients were not receiving proper medications;

       d.   patients were not receiving needed specialty care; and

       e.   patients' medical conditions were not being timely, thoroughly, and continuously monitored and treated.

87.    Despite all of the reports, news articles, and lawsuits, as set forth above, exposing inadequate medical care at Hudson County Correctional Center in the months and years leading up to Mr. Bonilla's death, these Defendants failed to properly train or supervise the medical staff at Hudson County Correctional Center to ensure the timely provision of adequate medical care by qualified providers, including proper evaluation, medications, and specialty care.

88.    Mr. Bonilla's death would have been prevented, had he received adequate medical care from qualified providers who had been properly trained and supervised while he was confined to civil immigration detention at Hudson County Correctional Center.

**X.    After Mr. Bonilla's Death, Hudson County and Hudson County Correctional Center Finally Take Action**

89.    At least 17 people have died at Hudson County Correctional Center under Defendants' care since 2013.  In the years 2017 and 2018 alone, six people are known to have died in Hudson County Correctional Center's custody, including Mr. Bonilla.

90.    Upon information and belief, following Mr. Bonilla's death and the subsequent investigation, in February 2018 four CFG employees were suspended or fired, including the director of nursing, a nurse practitioner, and two registered nurses.

91.    The next month, Hudson County terminated its five-year, 29-million-dollar contract with CFG, entered into in 2016.  Hudson County terminated the contract after mounting public outrage following reports of the many people who were harmed or died in Hudson County Correctional Center's custody.  In response to public outcry, Hudson County officials also announced that they would phase out the county's contract with ICE.

92.    In November 2018, Hudson County established the Hudson County Department of Corrections and Rehabilitation Advisory Board, tasked with reviewing the quality of medical care provided at Hudson County Correctional Center and determining how to improve

conditions, as well as a Grievance Review Board to examine grievances about conditions at

Hudson County Correctional Center.  Hudson County also entered into a contract to build a new

infirmary wing within the jail to serve approximately five times as many patients as were served

at the time of Mr. Bonilla's death.

## CAUSES OF ACTION

## COUNT ONE

### Federal Civil Rights Violations by Individual Provider Defendants
### 42 U.S.C. § 1983:  5th and 14th Amendments of the United States Constitution
### Inadequate Medical Care

93.      Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

94.      42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom or usage of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States of other person within the jurisdiction thereof to the
> deprivation of any rights, privileges or immunities secured by the
> constitution and law, shall be liable to the party injured in an action
> at law, suit in equity, or other appropriate proceeding for redress . . .

95.      Defendants Evelyn Bernardo, Tammy Cooper, Daisy Doronila, Paul Ittoop,

Teresa O'Brien, and John/Jane Doe Healthcare Providers 1-5 ("Individual Provider Defendants")

are persons for purposes of 42 U.S.C. § 1983.

96.      At all relevant times, the Individual Provider Defendants were acting under color

of state law.

97.      The Due Process Clause of the Fifth and Fourteenth Amendments of the United

States Constitution guarantee the right to adequate medical care to people held in civil

immigration detention.

98.     The Due Process Clause of the Fifth and Fourteenth Amendments also forbid people in civil detention from being subjected to punitive conditions as part of their civil detention.

99.     The constitutional rights of people in civil immigration detention are at least as great as those of people who have been criminally convicted.  At times, courts have recognized the rights of people in civil or pre-trial detention as greater.[4]

100.     During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition.  Despite being aware of Mr. Bonilla's cirrhosis diagnosis, the Individual Provider Defendants never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required.  Indeed, the Individual Provider Defendants failed to evaluate or treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.

101.     The Individual Provider Defendants thereby caused Mr. Bonilla substantial risk of serious physical harm, ultimately resulting in his death.  The Individual Provider Defendants acted wantonly, with callous and reckless disregard, and with reckless and deliberate indifference to Mr. Bonilla's constitutionally protected right to receive adequate medical care while he was confined to civil immigration detention at Hudson County Correctional Center.

102.     By failing to provide Mr. Bonilla adequate medical care, the Individual Provider Defendants deprived Mr. Bonilla of the rights, immunities, and privileges guaranteed to him, in

---

[4] *See Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015); *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982).

violation of 42 U.S.C. § 1983, including but not limited to the rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

103.     As a direct and proximate result of the Individual Provider Defendants' unconstitutional failure to provide adequate medical care and to evaluate and treat Mr. Bonilla's serious medical condition, Mr. Bonilla died on June 10, 2017, while still in custody.

104.     Accordingly, Plaintiffs are entitled to compensatory and punitive damages from the Individual Provider Defendants.

## COUNT TWO

**Federal Civil Rights Violations by Defendants Hudson County, Hudson County Correctional Center, and CFG**
**42 U.S.C. § 1983:  5th and 14th Amendments of the United States Constitution**
**Inadequate Medical Care**

105.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

106.     Defendants Hudson County, Hudson County Correctional Center, and CFG are persons for purposes of 42 U.S.C. § 1983.

107.     At all relevant times, Hudson County, Hudson County Correctional Center, and CFG were acting under color of state law.

108.      Hudson County, Hudson County Correctional Center, and CFG adopted, enforced, and acquiesced to a policy, custom, or practice of providing inadequate medical care at Hudson County Correctional Center.  This policy, custom, or practice is evidenced by the myriad lawsuits, illnesses, and deaths at the hands of Hudson County Correctional Center and CFG, which were well known by these Defendants at the time of Mr. Bonilla's confinement.

109.     As such, Hudson County, Hudson County Correctional Center, and CFG directed, encouraged, tolerated, acquiesced to, or were deliberately indifferent to the likelihood that their

30

staff and employees, including the Individual Provider Defendants, would fail to provide adequate medical treatment.

110.    Defendants Hudson County, Hudson County Correctional Center, and CFG failed to take remedial actions to end this policy, custom, or practice, and failed to take remedial action to establish an adequate policy, custom, or practice.

111.    Hudson County, Hudson County Correctional Center, and CFG acted wantonly, with callous and reckless disregard, and with deliberate indifference to Mr. Bonilla's constitutionally protected right to receive adequate medical care while he was confined at Hudson County Correctional Center.

112.    During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition.  Despite being aware of Mr. Bonilla's cirrhosis diagnosis, medical staff tasked with treating Mr. Bonilla never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required.  Indeed, medical staff failed to evaluate and treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.

113.    The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms these Defendants' longstanding provision of inadequate medical care, particularly to patients such as Mr. Bonilla, with serious, chronic conditions.

114.    As a direct and proximate result of this policy, custom, or practice of failing to provide adequate medical care, and the failure to establish a policy, custom, or practice that ensured adequate medical care was provided, Mr. Bonilla died on June 10, 2017, while still in custody.

115.    Because of these violations of Mr. Bonilla's constitutional rights, Plaintiffs are entitled to compensatory and punitive damages from Hudson County, Hudson County Correctional Center, and CFG under 42 U.S.C. § 1983.

## COUNT THREE

**Federal Civil Rights Violations by Defendants Hudson County,**
**Hudson County Correctional Center, and CFG**
**42 U.S.C. § 1983:  5th and 14th Amendments of the United States Constitution**
**Inadequate Supervision and Training of Medical Staff**

116.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

117.    Defendants Hudson County, Hudson County Correctional Center, and CFG are persons for purposes of 42 U.S.C. § 1983.

118.    At all relevant times, Hudson County, Hudson County Correctional Center, and CFG were acting under color of state law.

119.     Hudson County, Hudson County Correctional Center, and CFG adopted, enforced, and acquiesced to a policy, custom, or practice of failing to adequately train and supervise medical staff at Hudson County Correctional Center.  This policy, custom, or practice is evidenced by the myriad lawsuits, injuries, and deaths at the hands of Hudson County Correctional Center and CFG, which were well known by these Defendants at the time of Mr. Bonilla's confinement.  Yet, these Defendants failed to heed the overwhelming evidence of the need to properly supervise and train medical staff at Hudson County Correctional Center.

120. The need for proper supervision and training was obvious and the pattern of constitutional violations was so pervasive that failure to supervise and train constituted deliberate indifference.

121. As such, Hudson County, Hudson County Correctional Center, and CFG directed, encouraged, tolerated, acquiesced to, or were deliberately indifferent to the likelihood that their staff and employees, including the Individual Provider Defendants, would fail to provide adequate medical treatment. Defendants Hudson County, Hudson County Correctional Center, and CFG acted wantonly, with callous and reckless disregard, and with deliberate indifference to Mr. Bonilla's constitutionally protected right to receive adequate medical care while he was confined at Hudson County Correctional Center.

122. During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition. Despite being aware of Mr. Bonilla's cirrhosis, medical staff tasked with evaluating and treating Mr. Bonilla never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required. Indeed, Defendants failed to evaluate and treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.

123. Despite having been on notice of serious deficiencies in the provision of timely, adequate medical care—including failure to provide proper evaluation, treatment, medications, and specialty care; failure to timely, thoroughly, and continually monitor and treat patients' medical conditions; and failure to ensure medical staff only perform duties within their credentials, training, and experience—these Defendants failed to adequately supervise and train the medical staff at Hudson County Correctional Center. As a result, the care provided to Mr.

Bonilla throughout his confinement to civil immigration detention at Hudson County Correctional Center was inadequate and deliberately indifferent to his Constitutional rights.

124.    The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms the longstanding provision of inadequate medical care, particularly to patients at Hudson County Correctional Center, such as Mr. Bonilla, with serious, chronic conditions.

125.    As a direct and proximate result of Hudson County, Hudson County Correctional Center, and CFG's policy, custom, or practice of failing to adequately supervise and train medical staff at Hudson County Correctional Center, Mr. Bonilla died on June 10, 2017, while still in custody.

126.    Because of these violations of Mr. Bonilla's constitutional rights, Plaintiffs are entitled to compensatory and punitive damages from Hudson County, Hudson County Correctional Center, and CFG under 42 U.S.C. § 1983.

### COUNT FOUR

**Federal Civil Rights Violations by Defendants Claudette Blake, Jane Lowe,
Myriam Sterlin, and Eric Taylor
42 U.S.C. § 1983:  5th and 14th Amendments of the United States Constitution
Inadequate Medical Care**

127.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

128.    Defendants Claudette Blake, Jane Lowe, Myriam Sterlin, and Eric Taylor are persons for purposes of 42 U.S.C. § 1983.

129.    At all relevant times, Defendants Blake, Lowe, Sterlin, and Taylor were acting under color of state law.

130.    The Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution guarantee the right to adequate medical care to people held in civil immigration detention.

131.    This right is clearly established, and any reasonable supervisor at a detention center would be aware that a person confined to civil immigration detention has this right.

132.    Defendants Blake, Lowe, Sterlin, and Taylor, acting in their supervisory roles, adopted, enforced, participated in, and acquiesced to a policy, custom, or practice of Hudson County, Hudson County Correctional Center, and CFG medical staff providing inadequate medical care at Hudson County Correctional Center.

133.    This policy, custom, or practice is evidenced by the myriad lawsuits, injuries, and deaths at the hands of Hudson County, Hudson County Correctional Center, and CFG, which were well known by Defendants Blake, Lowe, Sterlin, and Taylor at the time of Mr. Bonilla's confinement.

134.    This policy, custom, or practice of Hudson County, Hudson County Correctional Center, and CFG providing inadequate medical care at Hudson County Correctional Center and the failure to implement a more appropriate policy, custom, or practice, created an unreasonable risk of a constitutional violation to Mr. Bonilla and others with serious medical conditions.

135.    Having been aware of these known deficiencies, Defendants Blake, Lowe, Sterlin, and Taylor acted wantonly, with callous and reckless disregard, and with deliberate indifference to the risk that their staff and employees, including the Individual Provider Defendants, would fail to provide adequate medical treatment.

136.    Defendants Blake, Lowe, Sterlin, and Taylor failed to take appropriate remedial actions to address these known deficiencies in policy, custom, or practice.

137.    The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms the longstanding provision of inadequate medical care, particularly to patients at Hudson County Correctional Center, such as Mr. Bonilla, with serious, chronic conditions.

138.    As a direct and proximate result of this policy, custom, or practice of providing inadequate medical care, and the failure to implement a more appropriate policy, custom and practice, Mr. Bonilla suffered constitutional injury, was denied adequate medical care, and died on June 10, 2017, while still in custody.

139.    Because of these violations of Mr. Bonilla's constitutional rights, Plaintiffs are entitled to compensatory and punitive damages from Defendants Blake, Lowe, Sterlin, and Taylor under 42 U.S.C. § 1983.

## COUNT FIVE

**Federal Civil Rights Violations by Defendants Claudette Blake, Jane Lowe,
Myriam Sterlin, and Eric Taylor
42 U.S.C. § 1983:  5th and 14th Amendments of the United States Constitution
Inadequate Supervision and Training of Medical Staff**

140.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

141.    Defendants Claudette Blake, Jane Lowe, Myriam Sterlin, and Eric Taylor are persons for purposes of 42 U.S.C. § 1983.

142. At all relevant times, Defendants Blake, Lowe, Sterlin, and Taylor were acting under color of state law.

143. Defendants Blake, Lowe, Sterlin, and Taylor, acting in their supervisory roles, adopted, enforced, and acquiesced to a policy, custom, or practice of failing to adequately train and supervise medical staff at Hudson County Correctional Center. This policy, custom, or practice is evidenced by the myriad lawsuits, injuries, and deaths at the hands of Hudson County Correctional Center and CFG, which were well known by Defendants Blake, Lowe, Sterlin, and Taylor at the time of Mr. Bonilla's confinement. Yet, these Defendants failed to heed the overwhelming evidence of the need to properly supervise and train medical staff at Hudson County Correctional Center.

144. The need for proper supervision was obvious and the pattern of constitutional violations was so pervasive that failure to supervise and train constituted deliberate indifference.

145. As such, Defendants Blake, Lowe, Sterlin, and Taylor directed, encouraged, tolerated, acquiesced to, or were deliberately indifferent to the likelihood that their staff, including the Individual Provider Defendants, would fail to provide adequate medical treatment. Defendants Blake, Lowe, Sterlin, and Taylor acted wantonly, with callous and reckless disregard, and with deliberate indifference to Mr. Bonilla's constitutionally protected right to receive adequate medical care while he was confined at Hudson County Correctional Center.

146. During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition. Despite being aware of Mr. Bonilla's cirrhosis diagnosis, medical staff tasked with treating Mr. Bonilla never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the

medications that he required.  Indeed, Defendants failed to evaluate and treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.

147.    Despite having been on notice of serious deficiencies in the provision of timely, adequate medical care—including proper evaluation, prescriptions and medications, treatment, specialty care, and care by medical staff performing duties within their credentials, training, and experience—these Defendants failed to adequately supervise and train the medical staff at Hudson County Correctional Center.  As a result, the care provided to Mr. Bonilla throughout his confinement to immigration detention at Hudson County Correctional Center was inadequate and deliberately indifferent to his Constitutional rights.

148.    The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms the longstanding provision of inadequate medical care at Hudson County Correctional Center, particularly to patients such as Mr. Bonilla, with serious, chronic conditions.

149.    As a direct and proximate result of this policy, custom, or practice of failing to adequately supervise and train medical staff at Hudson County Correctional Center, Mr. Bonilla died on June 10, 2017, while still in custody.

150.    Because of these violations of Mr. Bonilla's constitutional rights, Plaintiffs are entitled to compensatory and punitive damages from Defendants Blake, Lowe, Sterlin, and Taylor under 42 U.S.C. § 1983.

## COUNT SIX

### State Civil Rights Violations by All Defendants
### New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, *et seq.*
### Inadequate Medical Care

151.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

152.    All Defendants were acting under color of state law when they failed to provide Mr. Bonilla with adequate medical care or otherwise violated his rights.

153.    During his confinement to civil immigration detention, Mr. Bonilla had the clearly established constitutional right to adequate medical treatment under Article I, paragraph 1 of the New Jersey Constitution.  Any reasonable corrections officer or medical staff member at a civil immigration detention facility would be aware that a person confined to detention had this right.

154.    The Individual Provider Defendants were aware of Mr. Bonilla's cirrhosis diagnosis at the time he was confined to Hudson County Correctional Center.  Despite knowing of this serious medical condition, they never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required.  Indeed, these Defendants failed to evaluate or treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.

155.    The Individual Provider Defendants thereby caused Mr. Bonilla substantial risk of serious physical harm, ultimately resulting in his death.  The Individual Provider Defendants acted wantonly, with callous and reckless disregard, and with reckless and deliberate indifference to Mr. Bonilla's constitutionally protected right to receive adequate medical care while he was confined at Hudson County Correctional Center.

156.    Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor adopted, enforced, and acquiesced to a policy, custom, or practice of providing and/or permitting the provision of inadequate medical care.

157.    This policy, custom, or practice resulted in Mr. Bonilla's death.  During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition.  Despite being aware of Mr. Bonilla's cirrhosis diagnosis, medical staff tasked with treating Mr. Bonilla never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required.  Indeed, Defendants failed to evaluate or treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.

158.    Further, Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor adopted, enforced, and acquiesced to a policy, custom, or practice of Hudson County Correctional Center and CFG medical providers providing inadequate medical care at Hudson County Correctional Center, and failed to establish a policy, custom, or practice that ensured that adequate medical care was provided.  This deficient policy, custom, or practice is evidenced by the myriad lawsuits, illnesses, and deaths at the hands of Hudson County Correctional Center and CFG, which were well known by these Defendants at the time of Mr. Bonilla's detention.

159.    Defendants Hudson County, CFG, Hudson County Correctional Center, Blake, Lowe, Sterlin, and Taylor thus directed, encouraged, tolerated, acquiesced to, or were deliberately indifferent to the likelihood that their staff and employees, including but not limited to the Individual Healthcare Providers, would fail to provide adequate medical treatment.

160.    Defendants Hudson County, CFG, Hudson County Correctional Center, Blake, Lowe, Sterlin, and Taylor failed to take remedial actions to end this policy, custom, or practice, and failed to take remedial action to establish an adequate policy, custom, or practice. Defendants Hudson County, CFG, and Hudson County Correctional Center, Blake, Lowe, Sterlin, and Taylor acted wantonly, with callous and reckless disregard, and with deliberate indifference to Mr. Bonilla's constitutionally protected right to receive adequate medical care while he was confined at Hudson County Correctional Center.

161.    The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms the longstanding provision of inadequate medical care at Hudson County Correctional Center, particularly to patients such as Mr. Bonilla, with serious, chronic conditions.

162.    As a direct and proximate result of All Defendants' unconstitutional failure to provide adequate medical care and failure to implement a policy, practice, or custom that would have prevented a constitutional injury, Mr. Bonilla died while still in custody.

163.    Accordingly, Plaintiffs are entitled to compensatory damages from All Defendants, including economic and emotional distress damages, as well as punitive damages.

## COUNT SEVEN

**State Civil Rights Violations by Defendants Hudson County,
Hudson County Correctional, CFG, Claudette Blake, Jane Lowe,
Myriam Sterlin, and Eric Taylor
New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, *et seq.*
Inadequate Supervision and Training of Medical Staff**

164.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

165.    All Defendants were acting under color of state law when they failed to provide Mr. Bonilla with adequate medical care or otherwise violated his rights.

166.    During his confinement to civil immigration detention, Mr. Bonilla had the clearly established constitutional right to adequate medical treatment under Article I, paragraph 1 of the New Jersey Constitution.  Any reasonable corrections officer or medical staff member at a detention center would be aware that a person confined to civil immigration detention had this right.

167.    Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor adopted, enforced, and acquiesced to a policy, custom, or practice of failing to adequately train and supervise medical staff.

168.    This policy, custom, or practice resulted in Mr. Bonilla's death.  During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition.  Despite being aware of Mr. Bonilla's cirrhosis diagnosis, medical staff tasked with treating Mr. Bonilla never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required.  Indeed, Defendants failed to evaluate or treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.

169.    Further, Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor failed to establish a policy, custom, or practice that ensured

adequate supervision and training.  This failure is evidenced by the myriad lawsuits, illnesses, and deaths at the hands of Hudson County Correctional Center and CFG, which were well known by these Defendants during Mr. Bonilla's period of confinement at Hudson County Correctional Center.

170.    Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor thus directed, encouraged, tolerated, acquiesced to, or were deliberately indifferent to the likelihood that the supervision and training of the Hudson County Correctional Center medical staff was inadequate.

171.    Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor failed to take remedial actions to end this policy, custom, or practice, and failed to take remedial action to establish an adequate policy, custom, or practice. Defendants Hudson County, CFG, and Hudson County Correctional Center, Blake, Lowe, Sterlin, and Taylor acted wantonly, with callous and reckless disregard, and with deliberate indifference to Mr. Bonilla's constitutionally protected right to receive adequate medical care while he was confined at Hudson County Correctional Center.

172.    Defendants Blake, Lowe, Sterlin, and Taylor had a duty to supervise the Individual Provider Defendants, nurses, and other people who provided treatment to Mr. Bonilla and other people confined at Hudson County Correctional Center.

173.    Defendants Blake, Lowe, Sterlin, and Taylor failed to adopt a policy, custom, or practice of adequately supervising and training the Individual Provider Defendants, nurses, and others responsible for the provision of medical care at Hudson County Correctional Center. Based on the myriad lawsuits, illnesses, and deaths at the hands of Hudson County Correctional Center and CFG, Defendants Blake, Lowe, Sterlin, and Taylor were aware that the failure to

adopt an adequate supervision and training policy, custom, or practice created an unreasonable risk of violating the right to receive adequate medical care of people confined to civil immigration detention. Defendants Blake, Lowe, Sterlin, and Taylor were deliberately indifferent to that risk, and the violations of Mr. Bonilla's constitutional rights were directly and proximately caused by the failure of Defendants Blake, Lowe, Sterlin, and Taylor to adopt an adequate supervision and training policy.

174. The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened. The Hudson Assessment confirms the longstanding provision of inadequate medical care at Hudson County Correctional Center, particularly to patients such as Mr. Bonilla, with serious, chronic conditions.

175. As a direct and proximate result of all Defendants' unconstitutional failure to provide adequate medical care and failure to implement a policy, practice, or custom that would have prevented a constitutional injury, Mr. Bonilla died while still in custody.

176. Accordingly, Plaintiffs are entitled to compensatory damages from all Defendants, including economic and emotional distress damages, as well as punitive damages.

## COUNT EIGHT

### Wrongful Death (All Defendants)

177. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

178. This claim is brought pursuant to N.J.S.A. § 2A:31-1, *et seq.*

179.    Defendants owed a duty of reasonable care to Mr. Bonilla, and to others confined at Hudson County Correctional Center, to properly and adequately identify and treat medical conditions.  Accordingly, Defendants owed Mr. Bonilla a duty to evaluate and treat his cirrhosis and related complications.

180.    Defendants failed to apply the requisite standard of care for identifying, treating, and monitoring the medical conditions of people who were in their custody, care, and control. During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition.  Despite being aware of Mr. Bonilla's cirrhosis diagnosis, the Individual Provider Defendants never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required.  Indeed, these Defendants failed to evaluate or treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.  This breach of the duties that these Defendants owed to Mr. Bonilla increased his risk of death, diminished his chance of survival, and caused his untimely death.

181.    Further, Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor adopted, enforced, and acquiesced to a policy, custom, or practice of permitting nurses to treat patients when a doctor's expertise is required.

182.    This policy, custom, or practice increased the risk of Mr. Bonilla's death, diminished his chance of survival, and resulted in Mr. Bonilla receiving inadequate medical care, not being treated by qualified medical providers acting within the bounds of their credentials, and then dying from manageable or preventable complications.

183.    Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor also had a duty to adequately train and supervise their staff,

employees, and medical care providers how to properly identify, treat, and monitor the medical conditions of people confined at Hudson County Correctional Center.

184.    These Defendants failed to adequately train and supervise their staff, employees, and medical care providers how to properly identify, treat, and monitor the medical conditions of those confined at Hudson County Correctional Center, resulting in Mr. Bonilla receiving inadequate medical care and then dying from manageable or preventable complications.

185.    The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms the longstanding provision of inadequate medical care at Hudson County Correctional Center, particularly to patients such as Mr. Bonilla, with serious, chronic conditions.

186.    As a direct and proximate result of all Defendants' negligence, gross negligence, and/or recklessness, and breach of the duties they owed to Mr. Bonilla, the beneficiaries of Mr. Bonilla's estate have sustained pecuniary loss, economic damages, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, and loss of counsel.

187.    Accordingly, Plaintiffs are entitled to compensatory damages from all Defendants, including economic and emotional distress damages, as well as punitive damages.

## COUNT NINE

### Survival (All Defendants)

188.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

189.    This claim is brought pursuant to N.J.S.A. § 2A:15-3.

190.    Defendants owed a duty of reasonable care to Mr. Bonilla, and to others confined at Hudson County Correctional Center, to properly and adequately identify and treat medical conditions.  Accordingly, Defendants owed Mr. Bonilla a duty to treat his cirrhosis and related complications.

191.    Defendants failed to apply the requisite standard of care for identifying, treating, and monitoring the medical conditions of people who were in their custody, care, and control. During his confinement to civil immigration detention, Mr. Bonilla had cirrhosis, a serious medical condition.  Despite being aware of Mr. Bonilla's cirrhosis diagnosis, the Individual Provider Defendants never conducted a chronic care assessment regarding his cirrhosis, never created a care plan, never referred him to a specialist, and never gave him the medications that he required.  Indeed, these Defendants did not evaluate or treat Mr. Bonilla's cirrhosis, even though they had a diagnosis in hand and the information they needed.  This breach of the duties that all Defendants owed to Mr. Bonilla increased his risk of death, diminished his chance of survival, and caused his untimely death.

192.    Further, Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor adopted, enforced, and acquiesced to a policy, custom, or practice of permitting nurses to treat patients when a doctor's expertise is required.

193.    This policy, custom, or practice increased the risk of Mr. Bonilla's death, diminished his chance of survival, and resulted in Mr. Bonilla receiving inadequate medical care, not being treated by qualified medical providers acting within the bounds of their credentials, and then dying from manageable or preventable complications.

194.    Defendants Hudson County, Hudson County Correctional Center, CFG, Blake, Lowe, Sterlin, and Taylor also had a duty to adequately train and supervise their staff,

47

employees, and medical care providers how to properly identify, treat, and monitor the medical conditions of those confined at Hudson County Correctional Center.

195.    These Defendants failed to adequately train and supervise their staff, employees, and medical care providers how to properly identify, treat, and monitor the medical conditions of those confined at Hudson County Correctional Center, resulting in Mr. Bonilla receiving inadequate medical care and then dying from manageable or preventable complications.

196.    The recommendations of the October 2017 Hudson Assessment admit the following: staff should verify upon intake medications that people have been prescribed; health staff should not perform duties outside their credentials, training, and experience; intake personnel must receive ongoing training regarding proper screening; a chart review system should be implemented to enhance continuity of care; and intake screening policies should be strengthened.  The Hudson Assessment confirms the longstanding provision of inadequate medical care at Hudson County Correctional Center, particularly to patients such as Mr. Bonilla, with serious, chronic conditions.

197.    As a direct and proximate result of Defendants' negligence, gross negligence, and/or recklessness and breach of the duties they owed to Mr. Bonilla, Mr. Bonilla suffered extreme pain and suffering prior to his death.

198.    Accordingly, Plaintiffs are entitled to compensatory damages from all Defendants, including compensatory and punitive damages.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a.   Assume jurisdiction over this matter;

b.   Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and reasonable;

c.  Award Plaintiffs the costs of this action;

d.  Award Plaintiffs pre- and post-judgment interest, as permitted by law;

e.  Award Plaintiffs reasonable attorneys' fees;

f.  Declare:

    i.  Defendants have a custom, policy, or practice of providing inadequate medical care to people confined at Hudson County Correctional Center with deliberate indifference to their rights;

    ii.  Defendants have a custom, policy, or practice of failing to provide adequate supervision and training to staff responsible for the medical care of people confined at Hudson County Correctional Center, with deliberate indifference to their rights;

    iii.  Defendants denied Mr. Bonilla adequate medical care for his serious medical conditions resulting in his death in violation of the 5th and 14th Amendments to the United States Constitution and Article I, paragraph 1 of the New Jersey Constitution;

    iv.  Defendants' failure to adequately supervise and train staff in the provision of medical care resulted in Mr. Bonilla's death in violation of the 5th and 14th Amendments to the United States Constitution and Article I, paragraph 1 of the New Jersey Constitution; and

    v.  Defendants' negligence in the provision of medical care and the supervision and training of medical staff at Hudson County Correctional Center resulted in Mr. Bonilla's death; and

g.  Grant Plaintiffs such other relief as the Court deems appropriate and just.

Respectfully submitted,


_/s/ Michelle H. Yeary_
Michelle H. Yeary, Esq.
DECHERT LLP
502 Carnegie Center, Suite 104
Princeton, NJ 08540
Tel.: 609-955-3200
Fax: 609-955-3259
michelle.yeary@dechert.com

Jeffrey J. Masters, Esq.*
Michael A. Fazio, Esq.*
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel.: 215-994-4000
Fax: 215-994-2222
jeffrey.masters@dechert.com
michael.fazio@dechert.com

Hector Gonzalez, Esq.*
Daniel Goldberg-Gradess, Esq.*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel.: 212-698-3500
Fax: 212-698-3599
hector.gonzalez@dechert.com
daniel.goldberg-gradess@dechert.com

Matthew Lein, Esq.*
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel.: 202-261-3300
Fax: 202-261-3333
matthew.lein@dechert.com

Marinda van Dalen*
Maureen Belluscio*
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, New York 10001
212-244-4664

*Attorneys for Plaintiffs*

*Pro Hac Vice motions to be filed*

Dated:  May 30, 2019

## VERIFICATION

I, Joanna Bonilla, verify under penalty of perjury that the allegations made in this

Complaint are true and accurate to the best of my knowledge and understanding.

Dated: _05/30/19_

_Joanna Bonilla_
Joanna Bonilla

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

The undersigned hereby certifies that the matter in controversy is not the subject of any

other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:   May 30, 2019
          Princeton, New Jersey

<div style="margin-left:50%">

<u>*/s/ Michelle H. Yeary*</u>
Michelle H. Yeary, Esq.
DECHERT LLP
502 Carnegie Center, Suite 104
Princeton, NJ 08540
Tel.: 609-955-3200
Fax: 609-955-3259
michelle.yeary@dechert.com

</div>